# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

THE NORTH RIVER INSURANCE COMPANY,
Defendant and Appellant;
BAD BOYS BAIL BONDS,
Real Party in Interest and Appellant.

S282020

Second Appellate District, Division Eight
B322752

Santa Clara County Superior Court
F1765160

---

July 7, 2025

Justice Evans authored the opinion of the Court, in which Chief Justice Guerrero and Justices Corrigan, Liu, Kruger, Groban, and Jenkins concurred.

Justice Kruger filed a concurring opinion.

---

PEOPLE v. THE NORTH RIVER INSURANCE COMPANY

S282020

Opinion of the Court by Evans, J.

In California and throughout most of the United States, noncapital criminal defendants are eligible for pretrial release from custody pending trial by posting bail. (*In re Humphrey* (2021) 11 Cal.5th 135, 147 (*Humphrey*).) A bail bond is a " ' "contract between the surety and the government whereby the surety acts as a guarantor of the defendant's appearance in court under the risk of forfeiture of the bond." ' " (*People v. Safety National Casualty Corp.* (2016) 62 Cal.4th 703, 709 (*Safety National*).)

If a bonded defendant fails without sufficient excuse to appear in court as required, the trial court must declare the bail bond forfeited. (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 658 (*American Contractors*).) Once a bail bond has been declared forfeited, the bond company has 180 days from the notice of forfeiture to either produce the defendant or demonstrate facts indicating that the forfeiture should be set aside. (Pen. Code, § 1305, subds. (c)–(g).)[1] This 180-day period is often known as the appearance period and may be extended for up to an additional 180 days upon a showing of good cause. (§ 1305.4; see also *American Contractors*, *supra*, at p. 658.) A motion to vacate the forfeiture filed within the appearance period may be heard within 30 days of the expiration of the

_____

[1]     Further unlabeled statutory references are to the Penal Code.

1

appearance period, and the court may extend the 30-day period if good cause is shown. (§ 1305, subd. (j).)

In cases in which bail has been forfeited and the defendant flees to a foreign country, section 1305, subdivision (g) provides that the forfeiture may be vacated if the defendant has been temporarily detained by the bail agent in the presence of a law enforcement officer in the foreign jurisdiction, the defendant is positively identified by the law enforcement officer in an affidavit under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the defendant's whereabouts. Also in these cases, if the surety and the prosecuting agency agree that more time is needed to return the defendant to the court's jurisdiction, and the prosecuting agency agrees to toll the appearance period, the court may toll the period on the basis of that agreement. (§ 1305, subd. (h).)

This case involves the authority of the trial court in a bail bond forfeiture proceeding under section 1305, subdivision (g) where the surety has located the defendant and has filed a motion to vacate the forfeiture shortly before the expiration of the appearance period, but the prosecution has not made an extradition decision nor agreed to toll the appearance period. At issue is whether the trial court may compel the prosecution to make an extradition decision or whether it must continue the hearing on the motion as a matter of law to allow time for the prosecution to make an extradition decision. We conclude that section 1305 does not authorize the trial court to compel the prosecution to make an extradition decision or require the court to continue the hearing date on the motion to vacate until the prosecution makes such a decision. The plain language and legislative history of section 1305 indicate that prosecuting agencies have exclusive control over the extradition decision.

The trial court, thus, is not empowered to compel the prosecution to make an extradition decision. Further, the statute provides no basis to *require* the trial court to continue the hearing on the motion to vacate until the prosecution makes an extradition decision. We therefore reverse the judgment of the Court of Appeal.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Geovanni Quijadas Silva was charged with one count of committing a lewd or lascivious act on a child in violation of section 288, subdivision (b)(1). The trial court set bail at $100,000. The North River Insurance Company and its bail agent, Bad Boys Bail Bonds (collectively referred to as North River), posted a $100,000 bail bond to secure Silva's release from custody. On February 22, 2018, Silva failed to appear for a plea hearing, and the trial court declared the bond forfeited and mailed a notice of forfeiture to North River. The notice provided that the forfeiture would become final in 180 days, plus five days for mailing — that is, August 30, 2018 — unless Silva surrendered to the court or to custody.

North River requested and, pursuant to section 1305.4, was granted an additional 180-day extension of the appearance period provided by section 1305 to March 20, 2019. On March 20, 2019, North River filed a motion to vacate the forfeiture and exonerate the bond pursuant to section 1305, subdivisions (d) and (g) or, in the alternative, to toll the appearance period pursuant to section 1305, subdivisions (e) and (h). It served the motion on the People via overnight mail on March 19, 2019. North River included a declaration with the motion to exonerate indicating Silva had been located in Veracruz, Mexico on March 15, 2019. In the motion, North River argued that if the People

elected to not seek extradition, bond should be exonerated under section 1305, subdivision (g), but if the People elected to seek extradition, the appearance period should be tolled under subdivisions (e) or (h).

The People filed an opposition to the motion maintaining that they were not given an opportunity to make an extradition decision within the appearance period and no tolling agreement was made before the end of the appearance period.

In North River's reply, they argued that the plain language of section 1305, subdivision (g) did not require an extradition decision to be made within the appearance period, and either tolling or a continuance was permitted based on that subdivision as well as section 1305, subdivision (j).

The trial court denied North River's motion. It found the prosecution had not made an extradition decision by the end of the appearance period and no statutory provisions required the People to make an extradition decision. The court also denied the alternate request to toll the appearance period or to continue the matter to allow the prosecution to make an extradition decision, noting that the People had not stipulated to a continuance. The trial court entered summary judgment against North River in the amount of $100,000.

North River appealed. The Court of Appeal originally affirmed the trial court's order in a divided opinion, but it thereafter granted rehearing and reversed in a unanimous decision. In the original opinion, the majority concluded that "[t]he law did not require the trial court to continue the appearance period." (*People v. The North River Ins. Co.* (Feb. 7, 2023, B322752) [nonpub. opn.] (*North River I*), rehg. granted, judg. vacated by *People v. The North River Ins. Co.* (2023) 94

Cal.App.5th 663 (*North River II*).) It found that because the prosecution did not agree to toll the appearance period, section 1305, subdivision (h) did not apply. (*North River I, supra*, B322752.)

Relying on *People v. Tingcungco* (2015) 237 Cal.App.4th 249, 258, the original Court of Appeal majority opinion also concluded that section 1305, subdivision (g) required the surety to find the defendant " 'far enough in advance of the end of the 180-day appearance period to allow the prosecutor to decide whether or not to extradite.' " (*North River I, supra*, B322752.) It found North River did not satisfy subdivision (g) because its notice to the prosecution of less than a day was insufficient. (*North River I, supra*, B322752.) In addition, the Court of Appeal noted, as acknowledged in *Tingcungco*, that the Legislature considered and rejected an amendment to section 1305, subdivision (h) in 2012 that would have required tolling of the appearance period pending a prosecutor's extradition decision and would have exonerated the bond if the prosecution did not decide within a reasonable time. (*North River I, supra*, B322752; *Tingcungco, supra*, 237 Cal.App.4th at pp. 257–258.) Instead, the Court of Appeal concluded the Legislature enacted a provision permitting tolling "only after the prosecution has decided to extradite and it agrees it needs more time to do so." (*North River I, supra*, B322752.)

The original Court of Appeal majority also found North River's reliance on section 1305, subdivision (j) unavailing. Relying on *People v. Ranger Ins. Co.* (2007) 150 Cal.App.4th 638, 649–650, the majority held that a continuance under

subdivision (j) merely extends the date of the hearing, not the appearance period.[2] (*North River I, supra*, B322752.)

In reversing after rehearing, the Court of Appeal held that the "law required the court either to insist that the prosecution make an extradition decision or to grant the continuance so the prosecution had time to decide." (*North River II, supra*, 94 Cal.App.5th at p. 668; see also *id.* at p. 670 ["the trial court either had to ask the prosecution to announce its extradition decision or had to grant North River's request to continue the appearance period to give the prosecution enough time to make its decision"].) It further held the prosecution may make its extradition decision during the period in which a motion to vacate the forfeiture and exonerate the bond may be heard under section 1305, subdivision (j). (*North River II, supra*, at p. 671.)

The Court of Appeal explained that courts "generally construe bail statutes strictly and in favor of the bail company to avoid bail forfeiture. [Citation.] It would be an 'improper windfall for the County' if it could enjoy the fruits of the bail company's costly posse and yet also reap the benefit of the forfeited bond. [Citation.] We construe the statute to avoid this result, which could create a perverse incentive for prosecutors

---

[2] Justice Stratton dissented. In her view, the majority had improperly favored a " 'strict construction' " of the statutory language over "considerations of fairness." (*North River I, supra*, B322752.) In her view, courts should strictly construe statutory language in favor of the surety to avoid the harsh results of a bail bond forfeiture. (*Ibid.*) Such an approach, she reasoned, compels courts to protect the surety and the individuals who pledge property on behalf of the defendant seeking release from custody. (*Ibid.*)

to *avoid* making timely extradition decisions." (*North River II*, *supra*, 94 Cal.App.5th at p. 670.) The Court of Appeal also found that "the statutory text establishes the Legislature wanted courts to engineer 'just' arrangements with bail companies. Section 1305 repeats this direction four times. Requiring the prosecution to make a timely extradition decision advances the cause of justice." (*Ibid.*)

The Court of Appeal additionally noted that the "purpose of bail and bail forfeiture is to ensure defendants come to court and obey court rulings. [Citation.] Bail rules, including appearance periods, give bail companies predictable deadlines for what can be a challenging and expensive hunt. They must find fugitives and file section 1305, subdivision (g) motions within that period. North River did that. There is no reason to require the *prosecution's* decision, a decision completely beyond the bail company's control, to fall within the [appearance] period." (*North River II, supra,* 94 Cal.App.5th at p. 671.) It also observed that "prosecutors should not be able to use their own indecision to allow the government to keep bail money." (*Id.* at p. 672.)

The Court of Appeal found its conclusion consistent with section 1305, subdivision (h), though it acknowledged that subdivision "does not govern what should happen *after* such a bail company files a timely [section 1305, ]subdivision (g) motion and the prosecuting agency has not agreed to tolling." (*North River II, supra,* 94 Cal.App.5th at p. 672.) It declined to follow *Tingcungco* because that case relied heavily on a failed legislative amendment and did not consider section 1305, subdivision (j). (*North River II*, *supra*, at pp. 672–673.)

We granted the People's petition for review.

## II.   DISCUSSION

North River notified the prosecution of Silva's location on the last day of the appearance period.  It does not contend the prosecution was required to decide that day whether to seek Silva's extradition.  Rather, the Court of Appeal found, and North River agrees, that the statutory scheme requires the prosecution in these circumstances to make an extradition decision before the trial court makes a decision on the motion to exonerate the bond and enters summary judgment.  (See *North River II*, *supra*, 94 Cal.App.5th at p. 674.)  We are therefore asked to determine whether, in section 1305, subdivision (g) cases, the trial court is either empowered to compel the prosecution to make an extradition decision before entering summary judgment against the bondsman, or required to continue the hearing on the motion to vacate as a matter of law so that the prosecution can make an extradition decision.  Our resolution of this issue is a question of statutory construction, which we review de novo.  (*Apple, Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135; see also *Turner v. Victoria* (2023) 15 Cal.5th 99, 111.)

" ' " ' [A]s with any statute, we strive to ascertain and effectuate the Legislature's intent.' " [Citations.]  "Because statutory language 'generally provide[s] the most reliable indicator' of that intent [citations], we turn to the words themselves, giving them their 'usual and ordinary meanings' and construing them in context [citation]." [Citation.]  If the language contains no ambiguity, we presume the Legislature meant what it said, and the plain meaning of the statute governs.  [Citation.]  If, however, the statutory language is susceptible of more than one reasonable construction, we can look to legislative history in aid of ascertaining legislative

intent.' " (*People v. Allegheny Casualty Co.* (2007) 41 Cal.4th 704, 708–709.)

## A. Relevant Statutes and Principles of Bond Forfeiture

Bail forfeiture and related proceedings "are a matter of statutory procedure governed by sections 1305 through 1308." (*Safety National*, *supra*, 62 Cal.4th at p. 709.) If a defendant on bail fails to appear in court when required without sufficient excuse, the court must declare the bond forfeited. (§ 1305, subd. (a).) "When a defendant who posts bail fails to appear at a scheduled hearing, the forfeiture of bail implicates not just the defendant's required presence, but constitutes a 'breach of this contract' between the surety and the government." (*Safety National*, *supra*, at p. 709; see also *People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 313 (*Lumbermens*).) "[W]hen there is a breach of this contract, the bond should be enforced." (*American Contractors*, *supra*, 33 Cal.4th at pp. 657–658.)

For bonds exceeding $400, the court clerk must mail notice of forfeiture to the surety and the bail agent. (§ 1305, subd. (b)(1), (2).) The surety then has 180 days, plus five days if the notice is mailed, to either "produce the accused in court and have the forfeiture set aside, or to demonstrate other circumstances requiring the court to vacate the forfeiture." (*American Contractors*, *supra*, 33 Cal.4th at p. 657; see also § 1305, subds. (c)–(d), (f)–(g).) The surety may obtain an extension of the appearance period for up to an additional 180 days upon a showing of good cause. (§ 1305.4.) "The statutory scheme does not explicitly authorize additional *extensions* of the 180-day bond exoneration period." (*People v. Seneca Ins. Co.* (2010) 189 Cal.App.4th 1075, 1079 (*Seneca*).)

If the defendant appears within the appearance period, "the court shall, on its own motion at the time the defendant first appears in court on the case in which the forfeiture was entered, direct the order of forfeiture to be vacated and the bond exonerated. If the court fails to so act on its own motion, then the surety's or depositor's obligations under the bond shall be immediately vacated and the bond exonerated." (§ 1305, subd. (c)(1); see also *Seneca*, *supra*, 189 Cal.App.4th at p. 1079.)

Section 1305 identifies three instances in which a court must vacate a bond forfeiture even though the defendant has not been returned to court. First, section 1305, subdivision (d) requires a forfeiture to be vacated "[i]n the case of a permanent disability" if certain conditions are met to the court's satisfaction within 180 days of the forfeiture or the date of notice of forfeiture. Second, "[i]n all cases where a defendant is in custody beyond the jurisdiction of the court that ordered the bail forfeited, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." (§ 1305, subd. (f).) Last, and applicable to this case, section 1305, subdivision (g) provides, "In all cases of forfeiture where a defendant is *not in custody* and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, *and* is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, *and* the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate

the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." (Italics added.)

While no extensions of the appearance period are expressly permitted in the bond forfeiture statutes apart from the extension authorized in section 1305.4, section 1305 lays out two circumstances in which the superior court may order *tolling* of the appearance period. When a defendant is temporarily disabled, the court shall order tolling of the appearance period if certain conditions are met to the satisfaction of the court. (See § 1305, subd. (e).) Additionally, "[i]n cases arising under [section 1305, ]subdivision (g), if the bail agent and the prosecuting agency agree that additional time is needed to return the defendant to the jurisdiction of the court, *and the prosecuting agency agrees to the tolling* of the 180-day period, the court may, on the basis of the agreement, toll the 180-day period within which to vacate the forfeiture." (§ 1305, subd. (h), italics added.)

A court may hear a motion to vacate the forfeiture after the appearance period expires. Specifically, under section 1305, subdivision (j), "[a] motion filed in a timely manner within the 180-day period[,]" including a motion to vacate a forfeiture, "*may* be heard within 30 days of the expiration of the 180-day period. The court *may* extend the 30-day period upon a showing of good cause." (Italics added.) If the appearance period has elapsed and the forfeiture has not been set aside, the trial court shall enter summary judgment against each bondsman named in the bond in the amount of the bond plus costs. (§ 1306, subd. (a); see also *Lumbermens*, *supra*, 49 Cal.4th at p. 307; *Seneca*, *supra*, 189 Cal.App.4th at p. 1080.)

### B. The Text, Structure, and Purpose of Section 1305 Demonstrate That in Section 1305, Subdivision (g) Cases, the Trial Court Is Not Obligated To Continue a Motion to Vacate Until the Prosecution Makes an Extradition Decision, and the Trial Court May Not Compel the Prosecution To Make an Extradition Decision

The parties disagree about the interpretation of section 1305. The People contend that, contrary to the Court of Appeal's holding, nothing in section 1305 permits the superior court to unilaterally toll the appearance period in section 1305, subdivision (g) cases. According to the People, the trial court may not compel the prosecution to make an extradition decision or toll or extend the appearance period under section 1305, subdivision (j) for the prosecution to make an extradition decision. They also maintain the plain language of subdivision (g), read in context with section 1305, subdivision (h), requires the surety to establish that every element of subdivision (g) has been met within the appearance period before the forfeiture can be set aside. This includes the requirement that the prosecution elect not to seek extradition after being informed of the defendant's location. Further, the People argue the Court of Appeal's holding that the trial court either must insist the prosecution make an extradition decision, or continue the hearing on the motion to exonerate so the prosecution can make an extradition decision, interferes with the separation of powers doctrine.

North River, in turn, maintains that the statute includes an implicit equitable mechanism by which the filing of a motion to vacate the forfeiture serves both to notify the prosecution of the defendant's location and to compel the prosecution to make an extradition decision. North River contends this is the case

because section 1305, subdivision (g) applies "[i]n all cases of forfeiture," makes no mention of the 180-day appearance period, is silent as to what should happen when a prosecutor fails to make an extradition decision, and permits relief from forfeiture "on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." North River argues that summary judgment against the bail bond agent pursuant to section 1306 may not be entered until the prosecution makes an extradition decision. North River thus reasons that if the prosecution has not made an extradition decision by the hearing date on the motion to vacate the forfeiture, the court is required as a matter of law to continue the motion hearing pursuant to section 1305, subdivision (j) in order for the prosecution to make its extradition decision prior to entry of summary judgment.

We hold that section 1305 neither authorizes the trial court to compel the prosecution to make an extradition decision nor obligates the trial court as a matter of law to continue the hearing until the prosecution makes an extradition decision.

As we have seen, in section 1305, subdivision (g) cases, there are specifically enumerated statutory bases to extend or toll the appearance period in the bond forfeiture statutes. First, the surety may move to extend the appearance period by up to an additional 180 days, provided it shows good cause for the extension. (§ 1305.4.) Second, "if the bail agent and the prosecuting agency agree that additional time is needed to return the defendant to the jurisdiction of the court, *and the prosecuting agency agrees to the tolling* of the 180-day period, the court may, on the basis of the agreement, toll the 180-day period within which to vacate the forfeiture." (§ 1305, subd. (h), italics added.) The plain language of subdivision (h) "leaves it

to the [prosecuting] agency whether to agree to toll the appearance period while an extradition request is pending." (*People v. Financial Casualty & Surety, Inc.* (2017) 10 Cal.App.5th 369, 380 (*Financial Casualty*).)

Nothing in section 1305 suggests that once a surety has obtained the maximum good cause extension of time in section 1305.4, the appearance period may be further extended or tolled for any purpose other than disability without the prosecution's agreement. To the contrary, the plain language of section 1305, subdivision (h) indicates that the Legislature intended to permit tolling of the appearance period to return the defendant to the court's jurisdiction only with the prosecution's agreement.

Further, the plain language of section 1305, subdivision (g) requires that the "*prosecuting agency elect*[] not to seek extradition . . . ." (Italics added.) " 'The term elect [not only] implies a choice of options' [citation], but also an affirmative selection among those options." (*Financial Casualty*, *supra*, 10 Cal.App.5th at p. 379.) The statutory language thus indicates not only that the prosecution is responsible for making the extradition decision, but also that the prosecution's decision to extradite must be voluntary and not compelled. (*Ibid.*; see also *id.* at p. 380 ["courts have consistently read subdivision (g) of section 1305 as leaving the timetable and criteria for deciding whether to extradite squarely in the hands of the prosecuting agency"].) Had the Legislature intended to authorize a court to extend the appearance period without the prosecution's consent or to compel the prosecution to make an extradition decision, it would have done so clearly and explicitly. (See *Rodriguez v. FCA US, LLC* (2024) 17 Cal.5th 189, 199 [no elephants-in-mouseholes canon]; see, e.g., *People v. Seneca Ins. Co.* (2004) 116 Cal.App.4th 75, 83 [declining to extend period to return

defendant to custody by 30-day period to hear motion to exonerate; "[h]ad the Legislature also intended to automatically expand the surety's time to return the defendant to custody, it would have expressly done so"].)

This conclusion is consistent with the purpose of bail and the bond forfeiture statutes. The bail scheme furthers multiple competing purposes: the state's compelling interest "in assuring the arrestee's appearance at trial and protecting the safety of the victim as well as the public" on the one hand (*Humphrey*, *supra*, 11 Cal.5th at p. 142), and the defendant's "fundamental right to pretrial liberty" on the other (*id.* at p. 143). (See also *id.* at p. 155 [determining whether pretrial detention is warranted "requires a careful balancing of the government's interest in preventing crime against the individual's fundamental right to pretrial liberty"].) Further, " '[t]he object of bail and its forfeiture is to insure the attendance of the accused and his obedience to the orders and judgment of the court.' " (*Safety National*, *supra*, 62 Cal.4th at p. 709; see also *Stack v. Boyle* (1951) 342 U.S. 1, 5 ["the modern practice of requiring a bail bond or the deposit of a sum of money subject to forfeiture serves as additional assurance of the presence of an accused"].) The forfeiture statutes also further the purposes of ensuring fugitive defendants return to the jurisdiction to face trial, and avoiding forfeitures and the loss of collateral pledged by friends and family of the defendant. (*County of Los Angeles v. American Contractors Indemnity Co.* (2007) 152 Cal.App.4th 661, 666.) In crafting section 1305, subdivisions (g) and (h) to avoid bond forfeitures when defendants are beyond the jurisdiction of the state and not in custody, the Legislature has carefully balanced these important interests. The procedural requirements of the forfeiture statutes, including the requirements that the

prosecution elect not to seek extradition and agree to tolling the appearance period, are critical to a proper balancing of the competing interests.

Subdivision (h) of section 1305 was enacted in 2012. (Sen. Bill No. 989 (2011–2012 Reg. Sess.).) Its history supports a conclusion that the extradition decision is in the prosecution's sole purview. The bill author[3] stated that the provision " 'would allow a court to toll the 180-day period within which to vacate bail forfeiture, if it is agreed by both the bail agent and prosecuting attorney that additional time to return a fugitive defendant to the jurisdiction of the court is necessary. This bill simply allows both parties to come to an agreement if more time is needed to return a fugitive to custody.' " (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 989 (2011–2012 Reg. Sess.) as amended May 17, 2012, p. 3.) The bill author explained, "[a] problem arises where the prosecutor declines to make a decision about extradition in a timely fashion. Often, a good portion of the 180-day period is spent locating the fugitive. Once the fugitive is located and the prosecutor is notified, the prosecutor sometimes fails to decide about extradition with [*sic*] the 180-period. Because bail agents runt [*sic*] the risk of forfeiture, current law creates a disincentive to track down a fugitive near the end of the 180-day period, as there is no practical way for the agent to exonerate the bond prior to the deadline. As a result, agents are reluctant to expend the resources necessary to locate fugitives." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 989 (2011–2012 Reg. Sess.) as amended May 17, 2012, p. 3.)

---

[3] Amicus curiae Two Jinn, Inc. doing business as Aladdin Bail Bonds authored the bill.

Given this concern, the Legislature could have permitted tolling of the appearance period without the prosecution's agreement, or in circumstances such as those presented in this case — in which the surety filed a motion attesting that it located the defendant just before the appearance period expired and the prosecution did not have an opportunity, or failed, to make an extradition decision. But the Legislature did not. Instead, the author pointed out that Senate Bill No. 989 (2011–2012 Reg. Sess.) was a " 'modest bill [that] would allow the court to postpone the forfeiture of bail bonds in cases where additional time is necessary to extradite defendants from foreign jurisdictions. Importantly, the forfeiture could be postponed *only when the local prosecutor agrees to a postponement*. The bill gives district attorneys *complete control* over whether any postponements will be granted.' " (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 989 (2011–2012 Reg. Sess.) as amended May 17, 2012, p. 4, italics added.)

Despite being well aware of the concerns raised by sureties as to the time-intensive nature of recovering a fugitive defendant outside of the state, the Legislature ultimately enacted amendments to the statute that protected the power and exclusive discretion of the prosecution to make extradition decisions and agree to tolling. Had the Legislature contemplated empowering the court to compel the prosecution to make an extradition decision or require it to toll the appearance period until such decision is made, one would expect to see an indication of this intent in the legislative history. (See *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th

1158, 1169 [attaching significance to "the *absence* of legislative history"].) We see no such evidence.[4]

North River urges that once a motion to vacate the forfeiture is filed, fairness requires the prosecuting agency to make an extradition decision one way or the other, and if the prosecution fails to do so, the court is required *as a matter of law* to continue the hearing pursuant to section 1305, subdivision (j) until an extradition decision is made. Nothing in the text of subdivision (j), however, authorizes a trial court to *compel* an extradition decision or *requires* the court to continue the motion if an extradition decision has not been made by the hearing date

---

[4] Indeed, as the concurrence notes, when originally introduced, Senate Bill No. 989 (2011–2012 Reg. Sess.) would have provided exactly such a remedy "by requiring prosecutors to make their extradition decisions within a reasonable time and by requiring the applicable deadlines to be tolled until the extradition decision was made or the extradition process was completed." (Conc. opn. of Kruger, J., *post*, at pp. 10–11 [discussing Sen. Bill No. 989 (2011–2012 Reg. Sess.) as introduced Feb. 1, 2012]; *ante*, at pp. 5, 17.) However, the bill was later amended to remove that language and replace it with the language that currently appears in section 1305, subdivision (h). That the Legislature specifically contemplated a provision that would require tolling until the prosecution made an extradition decision, but ultimately settled on subdivision (h)'s more " 'modest' " provision (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 989, *supra*, as amended May 17, 2012, p. 4), lends further support to our conclusion that nothing in section 1305 requires the trial court to toll the appearance period until an extradition decision has been made. (See *Barme v. Wood* (1984) 37 Cal.3d 174, 178, fn. 4 [considering language in an "earlier draft" of statute to aid in determining legislative intent]; *Clark v. Workers' Comp. Appeals Bd.* (1991) 230 Cal.App.3d 684, 695 ["[s]uccessive drafts of a bill may be helpful in construing a statute if the meaning of the statute is unclear"]; accord, *Daily Income Fund, Inc. v. Fox* (1984) 464 U.S. 523, 539.)

on the motion to vacate. To the contrary, the language of subdivision (j) is *permissive,* simply providing that "[a] motion filed in a timely manner within the 180-day period *may* be heard within 30 days of the expiration of the 180-day period. The court *may* extend the 30-day period upon a showing of good cause." (Italics added.) Thus, even if a superior court may extend the time for the prosecution to make an extradition decision by continuing the hearing on the motion to vacate — an issue we do not decide here — subdivision (j) does not mandate a continuance of the hearing in every instance that the prosecution has not made such a decision. Nor does subdivision (j) provide a basis for a court to compel the prosecution to make an extradition decision.[5]

Moreover, in certain circumstances, an extradition decision simply cannot be made quickly, or at all. As the People point out, extradition decisions involve a number of time and labor-intensive considerations, including: determining whether there is an extradition treaty between the United States and the country where the defendant is located and whether extradition is required under the circumstances, coordinating with federal agencies to assess the feasibility of extradition, balancing the

---

[5]    The concurrence *would* address those additional questions and definitively hold that section 1305, subdivisions (g) and (j) are most reasonably construed as authorizing the trial court to: (1) continue the forfeiture hearing for "a limited time period after the close of the appearance period during which the prosecution can consider whether to extradite" (conc. opn. of Kruger, J., *post,* at p. 13); and (2) vacate the forfeiture of the bond in the event an extradition decision is "made in the period between the end of the appearance period and the [date of the] forfeiture hearing" (*ibid.*). The majority opinion expresses no views on those questions.

financial cost of extradition against the seriousness of the alleged offense, and evaluating the surety's affidavit and supporting materials from the law enforcement officer in the jurisdiction where the defendant is located to ensure the defendant has been successfully located. These complexities may in some cases impede or prevent the prosecution from making an extradition decision.

This is particularly true under the facts of this case, in which North River sought, and obtained, the full 180-day extension of the appearance period — amounting to a total of 391 days from the date bail was declared forfeited — to either produce Silva or establish a basis under section 1305 to exonerate the forfeiture. North River notified the prosecution of Silva's whereabouts the day before the appearance period expired by serving the motion to vacate the bond by mail, despite having located Silva five days before the appearance period expired. Once North River located Silva in Mexico, the statutory scheme afforded North River the opportunity to confer with the prosecution and secure an agreement to toll the period.[6] North River, however, failed to do so.

North River's argument that the court must order the prosecution to make an extradition decision or continue the hearing on the motion to vacate the forfeiture in order for the prosecution to make the determination would disregard the plain language and legislative history of section 1305,

---

[6]    As the People here did not agree to tolling and the parties did not enter into a tolling agreement, we do not have occasion to address whether all the elements of section 1305, subdivision (g) must be met before the parties may enter into a tolling agreement pursuant to section 1305, subdivision (h).

subdivision (h). It also risks casting out the timeline to rule on the motion to exonerate to an unspecified, potentially indefinite date.[7] This is not only unworkable but is contrary to the statutory scheme that seeks to return defendants to court in a timely fashion. We will not infer that such nonstatutory requirements exist where they are unsupported by the legislative history and the purpose of the bond forfeiture statutes.[8] While " '[t]he law traditionally disfavors forfeitures and this disfavor extends to forfeiture of bail[,]' " (*Lumbermens*, *supra*, 49 Cal.4th at p. 307) "[t]he policy disfavoring forfeiture cannot overcome the plainly intended meaning of the statute" (*id.* at p. 308).

## C. North River's Remaining Arguments Are Unpersuasive

North River and the Court of Appeal maintain that not vacating the forfeiture under the facts presented would amount to a windfall to the state and punishment to the surety. It is true that " '[i]n matters of this kind there should be no element of revenue to the state nor punishment of the surety.' " (*American Contractors*, *supra*, 33 Cal.4th at p. 657.) But, as we observed in *Lumbermens*, "the existing statutory scheme has been designed to avoid undue hardship for bail sureties. A

---

[7] Indeed, at oral argument, counsel for North River maintained that the extradition decision need not even be made by the hearing date on the motion to vacate, and argued an extension of the hearing date is required until "it reaches a point of absurdity."

[8] We agree with the People that compelling the prosecution to make an extradition decision would raise potential separation of powers concerns. (Accord, *Financial Casualty*, *supra*, 10 Cal.App.5th at p. 380.)

surety undertakes to guarantee the defendant's timely appearance in court. If the defendant fails to appear, the surety is contractually obligated to the government in the amount of its bond." (*Lumbermens*, *supra*, 49 Cal.4th at p. 313.) Section 1305 gives the surety "a generous period" to obtain relief from the forfeiture, and "[t]he deadlines and procedures for seeking relief have been tailored to accommodate the interests of the surety, which appropriately bears the burden of compliance with the statutory requirements." (*Lumbermens*, *supra*, at p. 313.)

The Court of Appeal emphasized that its conclusion was supported by the directive in section 1305, subdivision (g) and other subdivisions of section 1305 that "the court shall vacate the forfeiture and exonerate the bond on terms that are *just* . . . ." (§ 1305, subds. (g), (f), italics added; *id.*, subd. (c)(1), (2); see also *North River II*, *supra*, 94 Cal.App.5th at pp. 669–670.) From this language, the Court of Appeal appeared to glean a general rule of statutory construction that section 1305 should be interpreted with an eye toward "achieving justice." (See *North River II*, *supra*, at p. 670 [interpreting section 1305 to require the prosecution to announce its extradition decision or grant a continuance until the prosecution made its decision "is the reasonable construction of a statute that has the explicit purpose of achieving justice"; "the statutory text establishes the Legislature wanted courts to engineer 'just' arrangements with bail companies"].) But the word "just" in section 1305 is not relevant to the decision of whether to vacate the forfeiture. Instead, the plain language of section 1305, indicates that the use of the term "just" modifies the phrase "exonerate the bond[,]" not the phrase "vacate the forfeiture." (§ 1305, subds. (g), (f).) Thus, the statute requires the court to first ascertain whether the surety has established the grounds necessary to vacate the

bond and, if so, vacate the forfeiture, *and then* "exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release." (*Ibid.*) Courts have found such terms would, for example, include reducing from the bond any actual losses the prosecution incurred in effectuating the reapprehension of the defendant and losses the prosecution is reasonably likely to incur in effectuating the defendant's return. (See *People v. Pugh* (1970) 9 Cal.App.3d 241, 252.)

North River and amicus curiae argue *People v. Far West Ins. Co.* (2001) 93 Cal.App.4th 791 allows courts to invoke equitable principles to set aside bond forfeitures in circumstances where a surety has met all of its statutory obligations within the appearance period, in order to avoid absurd results. The Court of Appeal did not address the issue of equitable tolling. Some cases have applied principles of equity to vacate a bond forfeiture when the surety complied with its statutory requirements but the government committed error or engaged in bad faith delay. (See, e.g., *Far West, supra*, at pp. 797–798 [forfeiture vacated after surety detained defendant in Georgia, and Oakland police department thereafter directed Georgia law enforcement to release him from custody]; *Seneca, supra*, 189 Cal.App.4th at pp. 1082–1083 ["a prosecutor could abuse what might be characterized as a 'loophole' in section 1305, subdivision (g) (e.g., pretend to 'elect' extradition, then abandon such 'election' after the bond exoneration period; prosecutors could even have their cake and eat it too by intentionally delaying the initiation of extradition of defendants beyond the exoneration period)"].)

We do not decide today whether courts may rely on equitable tolling when there is evidence of error, bad faith,

unreasonable delay, or other factors in the extradition decision making process. Nor do we decide whether the prosecution's failure to make an extradition decision can ever constitute a refusal to extradite. But even assuming courts may rely on equitable principles to vacate a forfeiture, as *Far West* and *Seneca* suggest, there is no basis for equitable tolling under the circumstances of this case, where it is undisputed that North River served the motion to vacate by overnight mail only one day before the appearance period expired, filed the motion on the last possible day of the appearance period, and no agreement to toll the appearance period exists.

North River and amicus curiae raise a number of additional public policy arguments supporting their position that the trial court must compel the prosecution to make an extradition decision or continue the hearing on the motion to vacate the forfeiture in order for the prosecution to make such a decision. For example, amicus curiae takes issue with the fact that the prosecution has complete control over whether to extradite the defendant and contends this control could result in the prosecution either delaying or outright refusing to make an extradition decision, which would be unfair to both the surety and the individuals who have secured the bond. We express no view on these public policy arguments. "Whether the result here, based on an interpretation of the current statutory scheme, 'is a desirable policy is a matter beyond our purview, but it is not beyond the Legislature's. The Legislature can, if it sees fit, adjust' its approach" to bond forfeiture and exoneration when defendants are beyond the state's jurisdiction and not in custody. (*Ruelas v. County of Alameda* (2024) 15 Cal.5th 968, 981.)

Under current law and the circumstances of this case, however, North River's request that we adopt a rule compelling the court to either require the prosecution to make an extradition decision or continue the hearing on the motion to vacate the forfeiture in order for an extradition decision to be made "is inconsistent with a surety's contractual and statutory obligations." (*Lumbermens*, *supra*, 49 Cal.4th at p. 313.) "Ultimately, if the defendant's nonappearance is without sufficient excuse, it is the surety who 'must suffer the consequences.'" (*Safety National*, *supra*, 62 Cal.4th at p. 709.)

## III.   DISPOSITION

We reverse the judgment of the Court of Appeal and remand the case for further proceedings consistent with this opinion.

**EVANS, J.**

**We Concur:**

**GUERRERO, C. J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**JENKINS, J.**

PEOPLE v. THE NORTH RIVER INSURANCE COMPANY

S282020

Concurring Opinion by Justice Kruger

To incentivize bail companies to keep up their efforts to locate fugitives, Penal Code section 1305 provides that a bail company may get its money back if it locates and manages to detain a defendant who has fled to a foreign jurisdiction. But there's a catch: first the prosecuting agency must decide whether to start the process of extraditing the defendant to California. If the prosecution decides to seek extradition, the parties may agree to extend the time for the defendant's appearance in court, at which time the bail company gets its money back. (Pen. Code, § 1305, subd. (h).) If the prosecution decides *not* to seek extradition, the bail company also gets its money back. (*Id.*, subd. (g).) But what happens if the prosecution makes no decision at all before the appearance period is over? Is the bail company out of luck?

The trial court in this case said yes. The Court of Appeal initially agreed, but then had second thoughts. Why would the law permit prosecutors' indecision to deprive bail companies of money to which they would be entitled had prosecutors decided against extradition on the spot? In an opinion issued on reconsideration, the court endeavored to "construe the statute to avoid this result, which could create a perverse incentive for prosecutors to *avoid* making timely extradition decisions." (*People v. The North River Ins. Co.* (2023) 94 Cal.App.5th 663, 670 (*North River*).) The court held that in this case, "the trial court either had to ask the prosecution to announce its

1

extradition decision or had to grant North River's request to continue the appearance period to give the prosecution enough time to make its decision." (*Ibid*.)

The court arrived at this conclusion in two steps. First, the court concluded that the statute is most reasonably read to build in some time *after* the appearance period for prosecutors to decide what to do. As the court read the statute, the bail company must find the fugitive during the appearance period, but the prosecutor may make its extradition decision afterwards — at any point before the statutorily required hearing on whether the bail bond will ultimately be forfeited. Second, the court concluded that bond forfeiture cannot proceed unless and until prosecutors decide whether to extradite. Trial courts thus may compel prosecutors to decide and must postpone the forfeiture hearing until the decision has been made. (*North River*, 94 Cal.App.5th at pp. 668, 670, 674.)

The majority opinion today addresses only the second step of this analysis and concludes it is at least one step too far. I agree. The statute does not empower the trial court to force an extradition decision, nor does it require the trial court to continually afford such continuances as may be necessary for the decision to be made. (Maj. opn., *ante*, at p. 13.)

I write separately, however, to address the first step of the Court of Appeal's analysis — that is, its determination that the prosecutors' extradition decision need not be made during the appearance period for the bond company to have any chance of getting its money back. This more modest determination about the deadline for the prosecutors' decision is significant in its own right. It supplies an independent basis for reversing the trial court's ruling in this case. It appears to be the subject of a

published conflict in the Courts of Appeal. (See *People v. Tingcungco* (2015) 237 Cal.App.4th 249, 258 (*Tingcungco*) ["[Penal Code section 1305,] subdivision (g) requires the surety to locate the fugitive far enough in advance of the end of the 180-day appearance period to allow the prosecutor to decide whether or not to extradite."].) And it is a central component of the parties' debate in this court. (See maj. opn., *ante*, at pp. 12–13.) I would thus address the issue now rather than reserving it for another day.

On this issue, although the statute is not a paragon of clarity, my reading of the statutory text and its history favors the approach the Court of Appeal took in this case. The statute may not allow for indefinite tolling for prosecutors to make their decisions about whether to extradite, but when a fugitive is located during the appearance period, the statute is reasonably read to build in a limited period of time for prosecutors to decide what to do. The statute also permits (even if it does not require) the trial court to extend that time for good cause. (Pen. Code, § 1305, subd. (j).) In this way, the statute goes at least part of the way toward facilitating timely extradition decisions, and thus preserving bail companies' incentives to persist in their efforts to locate fugitives abroad.

## I.

The issue arises in this case because even though North River had located the fugitive within the appearance period, the prosecution had not made its extradition decision within that same period. The trial court held, and the People now argue, that North River's motion to vacate bail forfeiture was therefore ineffective. The Court of Appeal and North River disagree.

To evaluate this threshold debate about the required timing of the extradition decision, I'll start with the text of the flight exception to bail forfeiture. Penal Code section 1305, subdivision (g) (section 1305(g)), provides: "In all cases of forfeiture where a defendant is not in custody and is beyond the jurisdiction of the state, is temporarily detained, by the bail agent, in the presence of a local law enforcement officer of the jurisdiction in which the defendant is located, and is positively identified by that law enforcement officer as the wanted defendant in an affidavit signed under penalty of perjury, and the prosecuting agency elects not to seek extradition after being informed of the location of the defendant, the court shall vacate the forfeiture and exonerate the bond on terms that are just and do not exceed the terms imposed in similar situations with respect to other forms of pretrial release."

This language nowhere says that the prosecutor must make the extradition decision within the appearance period. This is notable, because other subdivisions about vacating forfeiture or tolling do explicitly require specified conditions to be met within the appearance period — that is, "within 180 days." (Pen. Code, § 1305, subd. (c)(1); *id.*, subd. (c) [court must vacate forfeiture upon timely surrender or arrest]; *id.*, subd. (d) [court must vacate forfeiture upon timely establishment of permanent disability]; *id.*, subd. (e) [court must order tolling upon timely establishment of temporary disability].) The Legislature could have included comparable language in section 1305(g), but it did not. Ordinary interpretive principles instruct us to treat that choice as meaningful. (See *Jarman v. HCR ManorCare, Inc.* (2020) 10 Cal.5th 375, 385 [a "difference in terms between the subdivisions suggests the Legislature intended to take a different approach"]; *Cornette v. Department*

*of Transportation* (2001) 26 Cal.4th 63, 73 ["When one part of a statute contains a term or provision, the omission of that term or provision from another part of the statute indicates the Legislature intended to convey a different meaning."].)

Let's next consider what the statute tells us about the final step in the process, the filing and hearing on the motion to vacate forfeiture. The statute says that a motion is "timely" if it is filed within the 180-day appearance period (Pen. Code, § 1305, subd. (j)), a period that may be extended for another 180 days with an appropriate showing (*id.*, § 1305.4). The statute also requires the bail company to give the prosecutor at least 10 days of notice before a hearing on a motion to vacate under section 1305(g). (*Id.*, subd. (k).) That motion may be heard up to 30 days after the appearance period expires, or later if the trial court finds good cause. (*Id.*, subd. (j).)

Reading these provisions together, it seems at the very least possible that the statutory deadlines work much as the Court of Appeal understood them: While the bail company must fulfill its side of the bargain and locate the defendant before the 180 days have expired, so as to support the filing of a motion to vacate before the expiration of that period, the bail company need not move up its internal deadline for foreign recovery operations by the essentially indeterminate time period that might be required for the prosecution to decide whether or not to extradite. (Cf. *Tingcungco, supra*, 237 Cal.App.4th at p. 258 [the bail company must locate the fugitive early enough to allow for an extradition decision before the appearance period expires].) Rather, the bail company has a determinate deadline of 180 days to locate the defendant and file a motion to vacate, after which it must give appropriate notice to the prosecution. Prosecutors then have until the hearing — which may be held

5

as many as 30 days after the end of the appearance period, or even later if there is good cause — to decide what steps to take next.

This reading has the distinct advantage of avoiding the peculiar result of saddling the bail company with responsibility for the timing of the prosecutors' decisions, over which the company has no control. (See *North River, supra*, 94 Cal.App.5th at p. 671 ["[b]ail rules, including appearance periods, give bail companies predictable deadlines for what can be a challenging and expensive hunt"; there is "no reason to require the *prosecution's* decision, a decision completely beyond the bail company's control, to fall within the period"].) Understanding the statute to instead focus on the bail company completing the tasks it *can* control during the appearance period is in keeping with prior cases that have held that the bail company must take "*defensive* action" within that period. (*People v. Financial Casualty & Surety, Inc.* (2021) 73 Cal.App.5th 33, 41; see, e.g., *People v. Ramirez* (1976) 64 Cal.App.3d 391, 393, 401 ["defenses" such as whether the defendant was "actually surrendered or recaptured within the 180-day period," must occur during the appearance period].) Establishing a defendant's location in a foreign jurisdiction is such an action. But there is nothing in the case law — other than a brief line in *Tingcungco, supra*, 237 Cal.App.4th at page 258 — to indicate that it falls on the *bail company* to secure a final extradition decision within the prescribed 180-day limit.

The parties debate what inferences to draw from the provision in Penal Code section 1305, subdivision (h), which permits the parties to mutually agree to toll the appearance period. According to the People, the express provision for mutual tolling precludes any avenue that would lead to

unilateral tolling. But if the statute works as I have described it, tolling need never come into play. (Cf. *People v. Indiana Lumbermens Mutual Ins. Co.* (2010) 49 Cal.4th 301, 305, fn. 3 (*Lumbermens*) [Pen. Code, § 1305, subds. (f) and (g) permit relief from forfeiture "without reference to the 180-day period"]; *People v. Financial Casualty & Surety, Inc.* (2019) 39 Cal.App.5th 1213, 1217 & fn. 4 [the prosecutor's decision to pursue extradition after the appearance period but before the forfeiture hearing months later was legally effective without tolling].) Tolling would be required (and authorized) if the parties mutually desire to give the bail company more time to return the defendant to the jurisdiction of the court (Pen. Code, § 1305, subd. (h)) — an issue that would typically arise after prosecutors have decided to extradite (e.g., *Tingcungco, supra,* 237 Cal.App.4th at p. 258 [Pen. Code, § 1305, subd. (h) tolling applies "after a decision to extradite has been made"]; *People v. International Fidelity Ins. Co.* (2018) 20 Cal.App.5th 345, 367 [same]). But it is unnecessary to toll the appearance period to allow prosecutors to make their decision if, as I have suggested, that decision may come after the appearance period and before the final decision on vacatur is made.[1]

---

[1] To be sure, Penal Code section 1305, subdivision (h) refers to tolling "the 180-day period *within which to vacate the forfeiture*" (italics added), which might be read to suggest that every element of section 1305(g), including the prosecutor's decision not to extradite, must occur within the 180-day period, so that the vacatur, too, can occur within that period. But it is clear from surrounding provisions that this cannot be: While the bail company's motion to vacate certainly must be filed within the 180 days, the actual decision on whether to vacate

The statutory text is, in sum, at least susceptible to the reading that the Court of Appeal gave it. And the legislative history lends support to that reading. As a general matter, the legislative history indicates that the Legislature intended section 1305(g) to benefit bail agents and sureties. Analyses of the bill that led to the passage of section 1305(g) stated that the purpose of the bill was to enable bail agents to obtain return of a bond after locating a fugitive in another jurisdiction. (Sen. Com. on Crim. Proc., Analysis of Sen. Bill No. 1245 (1995–1996 Reg. Sess.) as amended May 8, 1995, p. 3; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 1245 (1995–1996 Reg. Sess.) as amended May 16, 1995, p. 2.) One analysis noted that a "key advantage[] of the bail system in California is that private enterprise (the bail agent) has an economic interest in pursuing and apprehending a fugitive defendant" and that those efforts would not be economically feasible without the assurance that bail will be exonerated once the defendant is located. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1245 (1995–1996 Reg. Sess.) as amended June 19, 1995, p. 5.)

More specifically, section 1305(g) was meant to solve a "recurring problem" that occurred when the prosecution decided not to pursue extradition: first, even when the bail agent "at considerable expense," had located the defendant in another jurisdiction, "law enforcement in that location will not allow the

_____

the forfeiture may occur 30 days or more after that appearance period is over, and the prosecution may not even receive notice of the basis for the bail company's motion until after the appearance period. (Pen. Code, § 1305, subds. (j), (k).)

defendant to be placed in custody unless California chooses to extradite"; and second, existing law only allowed for return of the bond if the defendant was in custody. (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1245, *supra*, as amended June 19, 1995, p. 5; see also Sen. Com. on Crim. Proc., Analysis of Sen. Bill No. 1245, *supra*, as amended May 8, 1995, p. 4 [reiterating that the bond would not be returned if the defendant was out of custody when there was a decision not to extradite].) The addition of section 1305(g) would "correct an inequity in the law" and benefit the public by "lead[ing] to the apprehension and return of fugitives at no additional expense." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 1245, *supra*, as amended June 19, 1995, p. 6.) In this way, the bill provided "an equitable mechanism for bail agents to recover a posted bond not only when the district attorney chooses to extradite a defendant (existing law), but also when the district attorney chooses not to extradite a defendant (existing law does not return the bond to the bail agent in this situation)." (*Id.* at p. 7.)

Interpreting Penal Code section 1305 to flatly prohibit bail exoneration if the extradition decision is not made within the appearance period would undermine the Legislature's purposes in creating the section 1305(g) mechanism for bail recovery. This is because the time required for the extradition decision is, from the bail companies' perspective, inherently unpredictable. And that unpredictability leads to uncertainty about the date by which the bail companies must locate fugitives, making bail companies' ability to recover forfeited bail more difficult and undermining the Legislature's goal of incentivizing companies to persist in their efforts to locate fugitives in other jurisdictions.

The focal point of much of the parties' briefing concerns developments after the enactment of section 1305(g): the

inferences to be drawn from the history of 2012 amendments of the bail forfeiture statute. Section 1305(g) had resolved one problem bail companies encountered when the prosecutor decided not to extradite. A 2010 appellate decision, *People v. Seneca Ins. Co.* (2010) 189 Cal.App.4th 1075, had illustrated a different problem. In *Seneca*, the bail agent located the fugitive and the prosecutor decided to extradite, all well before the appearance period deadline — but the prosecution did not initiate extradition to bring the defendant to California before the end of that period. (*Id.* at p. 1081.) The court denied the bail company's motion to vacate forfeiture or toll the period to exonerate bail, holding that under such circumstances, "[t]he statutory scheme does not authorize additional extensions or tolling of the bond exoneration period." (*Id.* at p. 1082.)

Considering the problem raised by *Seneca*, the Legislature also identified a related issue: that a delayed extradition decision made it more difficult to complete extradition and return the defendant to the court within the appearance period. (See Sen. Com. on Public Safety, Analysis of Sen. Bill No. 989 (2011–2012 Reg. Sess.) as introduced Feb. 1, 2012, p. 5 [because a fugitive is often found late in the 180-day period, if the prosecutor fails to make a timely decision about extradition there is "no practical way for the agent to exonerate the bond"]; Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 989 (2011–2012 Reg. Sess.) as amended May 17, 2012, p. 2 [same].)

An introduced bill would have responded to these concerns by requiring prosecutors to make their extradition decisions within a reasonable time and by requiring the applicable deadlines to be tolled until the extradition decision was made or the extradition process was completed. (See Sen. Bill No. 989

(2011–2012 Reg. Sess.) as introduced Feb. 1, 2012; maj. opn., *ante*, at pp. 5, 17.) As the majority explains, instead of imposing these requirements, the bill was amended to adopt a more modest tolling measure; the Legislature would enact this measure as Penal Code section 1305, subdivision (h), which permits the parties to agree to toll the appearance period in cases involving the extradition of fugitives. (Maj. opn., *ante*, at p. 17.)

Penal Code section 1305, subdivision (h) tells us how the Legislature decided to respond to the problem posed in *Seneca*, concerning delays in the process of extraditing and returning fugitives to court. But nothing in the legislative history of that provision speaks directly to the timing of prosecutors' decision *not* to extradite. Other elements of the legislative history are, however, telling. In response to the version of the bill that would have required a prosecutor's extradition decision in a reasonable time, the Los Angeles District Attorney urged that notice to prosecutors should be a requirement of any motion to exonerate bail in a case involving extradition. The district attorney reported that prosecutors ordinarily did not receive notice of a motion to exonerate bail in cases involving a bail fugitive, and therefore might not have an opportunity to explain their reasoning and actions regarding extradition to a court hearing the motion. (Sen. Com. on Public Safety, Analysis of Sen. Bill No. 989, *supra*, as introduced Feb. 1, 2012, p. 8; see also *People v. International Fidelity Ins. Co.*, *supra*, 20 Cal.App.5th at p. 355 [explaining why county counsel, rather than the district attorney, is ordinarily responsible for bail forfeiture proceedings].)

In a later amendment to the same bill that added subdivision (h) to Penal Code section 1305, the Legislature

added the requirement that the moving party provide notice at least 10 court days before a hearing on a motion to vacate forfeiture (which, again, may occur as many as 30 days after the end of the appearance period). A subsequent analysis of the notice provision explained, in evident response to the views expressed by the District Attorney, that the provision would "protect the interest of the district attorney in pursuing a criminal prosecution against the fugitive defendant" and ensure the prosecutor could "provide necessary information about the case to the court, including whether or not extradition is feasible." (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 989, *supra*, as amended May 17, 2012, p. 2.)

This history suggests that when making post-*Seneca* changes to the statute in 2012, the Legislature was primarily concerned with the time that elapsed between the decision to extradite and the defendant's appearance in court. And to head off possible delays in the process, the Legislature included a notice provision that reflected an understanding that the prosecution often will not know when a motion to vacate has been filed. The Legislature therefore provided for at least 10 days of notice before a hearing on that motion — a hearing which, once again, may occur as many as 30 days after the appearance period has ended.

Given the history behind this statutory change, it would be odd to conclude that the Legislature meant to require the bail company to secure an extradition decision before even filing a motion to vacate. If that were the case, what purpose would it serve to require prehearing notice to prosecutors? By definition, prosecutors would already have been notified. The most reasonable inference to be drawn from the history of the notice

provision is that the Legislature understood that prosecutors may sometimes make their decisions about extradition after the appearance period has ended, in the few weeks preceding the final determination of whether bail will be forfeited.

Long story short, the Court of Appeal's understanding of the relevant timeframe for a prosecutor's decision on extradition is the most plausible understanding, given what the text and history tell us about the Legislature's efforts to incentivize bail companies to locate fugitives while preserving the prerogatives of prosecutors and trial courts in the face of a defendant's flight. The Legislature did not authorize indefinite tolling without the prosecution's consent, but it did build in a limited time period after the close of the appearance period during which the prosecution can consider whether to extradite before the final decision on bail forfeiture is made.

To the extent any doubt remains about whether the extradition decision can be made in the period between the end of the appearance period and the forfeiture hearing, practical considerations would tip the balance. We have said that "[Penal Code] section 1305 must be strictly construed in favor of the surety to avoid the harsh results of a forfeiture." (*Lumbermens*, *supra*, 49 Cal.4th at p. 307.) It should be emphasized here that the costs of forfeiture do not fall on bail companies alone. Ultimately, the costs are also borne by family and friends who have put up collateral to facilitate the defendant's freedom from pretrial detention. To the extent Penal Code section 1305 is susceptible to a reading that preserves some minimum time after the appearance period in which prosecutors can consider the decision on which the ability to avoid forfeiture rests, we should adopt it.

## II.

Again, I agree with the majority on the issue it decides: just because the extradition decision *may* be made after the appearance period does not mean that the trial court *must* compel that decision or continue a hearing on forfeiture for that decision to be made. (See maj. opn., *ante*, at p. 13; cf. *North River*, *supra*, 94 Cal.App.5th 663, 672 [the trial court either had to ask the prosecution to announce its extradition decision or to grant North River's request to continue the appearance period to give the prosecution time to make its decision].)

But as I have noted, the trial court in this case denied North River's motion to vacate based primarily on its view that the extradition decision had to be made within the appearance period; the court then rejected a motion to continue under Penal Code section 1305, subdivision (j), evidently because it believed that it lacked the authority to continue the hearing if the prosecutors did not agree.

I have already explained why I believe the trial court erred on the first point. On the latter point, the court appeared to conflate the requirement of the prosecutor's stipulation to tolling in Penal Code section 1305, subdivision (h), with Penal Code section 1305, subdivision (j). Subdivision (j), unlike subdivision (h), explicitly allows a court to extend, for "good cause," the period for making a determination on a motion to vacate (see *Lumbermens*, *supra*, 49 Cal.4th at p. 312 [when the Legislature added the timing provisions of what is now subd. (j) "it had motions for relief from forfeiture in mind"]), indicating that it is within a court's discretion to grant a continuance to allow time for an extradition decision on which the question of bail forfeiture rests. Because the trial court thought (wrongly,

in my view) that the prosecutors' decision on extradition had to be made before the end of the appearance period, it did not elicit from the parties any reasons why the prosecutor still had not made an extradition decision 77 days after receiving notice, or whether the circumstances of the case would render it appropriate to continue the forfeiture hearing until a later date.

The majority does not reach them today, so any further exploration of the issues I have described here is a task for remand. For the reasons I have explained, the answers to these questions remain significant to the proper resolution of this case and others like it.

With these observations, I concur in majority opinion.

**KRUGER, J.**

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. The North River Insurance Company

---

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 94 Cal.App.5th 663
**Review Granted (unpublished)**
**Rehearing Granted**

---

**Opinion No.** S282020
**Date Filed:** July 7, 2025

---

**Court:**  Superior
**County:**  Santa Clara
**Judge:**  Le Jacqueline Duong

---

**Counsel:**

Jefferson T. Stamp for Defendant and Appellant and for Real Party in Interest and Appellant.

Toni L. Martinson for Two Jinn, Inc., as Amicus Curiae on behalf of Defendant and Appellant.

James R. Williams and Tony LoPresti, County Counsel, Kavita Narayan, Chief Assistant County Counsel, Christopher A. Capozzi, Sterling S. Larnerd and Hannah Godbey, Deputy County Counsel, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Jefferson T. Stamp
Attorney at Law
595 Park Avenue, Suite 200
San Jose, CA 95110
(408) 521-5252

Hannah Godbey
Deputy County Counsel
70 West Hedding Street, East Wing, 9th Floor
San Jose, CA 95110
(408) 299-9041